UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELO JOSUE ROCHA CHAVARRIA,<br><br>    Plaintiff,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, et al.,<br><br>    Defendant. | No. 1:25-cv-01755-DAD-AC<br><br>ORDER GRANTING PETITIONER'S *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER<br><br>(Doc. No. 2) |

This matter is before the court on petitioner's *ex parte* motion for a temporary restraining order filed on December 5, 2025. (Doc. No. 2). For the reasons explained below, the court will grant petitioner's motion.

**BACKGROUND**

On December 5, 2025, petitioner Marcelo Josue Rocha Chavarria filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his detention by the United States Immigration and Customs Enforcement ("ICE"). (Doc. No. 1.)  Petitioner asserts two claims in that petition:  (1) violation of the Fifth Amendment Due Process Clause; and (2) violation of the Immigration and Nationality Act (*Id*. at ¶¶ 92–98.)  In support of the pending motion for temporary restraining order, petitioner provides evidence of the following.

/////

Petitioner, a native and citizen of Nicaragua, entered the United States on June 6, 2022, after fleeing Nicaragua for fear of political persecution, and was immediately detained. (Doc. No. 2-2 at 12.) After being held for three days, petitioner was released with orders to upload a photo of himself to a phone application every fifteen days and report to the Ventura ICE office within sixty days. (*Id.*) Petitioner reported within a week of his release from custody and continued to check in via photograph and in-person as directed. (*Id.* at 12.) About one month after his release, petitioner was given permission to move to Bay Point, California, and was ordered to report to the San Francisco ICE office, which he did. (*Id.*) Petitioner then registered with the Intensive Supervision Assistance Program ("ISAP") and was told he need only report via photograph on the ISAP application once a month. (*Id.* at 12–13.) Petitioner has complied with all check-in requirements except for three or four occasions when he was late uploading his photo due to working late and initially forgetting. (*Id.* at 13–14.)

On April 19, 2023, petitioner filed an asylum and withholding of removal application and attended his first immigration court hearing a few months later. (*Id.* at 13.) Petitioner is still awaiting his second immigration court hearing. (*Id.*) Petitioner does not have any criminal history. (*Id.* at 15.) Petitioner has lived with his girlfriend, Liz Gadea Herrera, for the last three years. (*Id*. at 16.)

On October 20, 2025, petitioner reported to ISAP as required and his case manager informed him that he would have to wear an ankle monitor because he uploaded his photograph four days late. (*Id.* at 14.) Petitioner was told to report to the ISAP office on November 3, 2025. (*Id.*) On October 31, 2025, petitioner received notice that he also needed to report to the San Francisco ICE office on November 3, 2025. (*Id.*) Petitioner checked in at ISAP on November 3, 2025, as directed and his case manager said he was doing well with the ankle monitor. (*Id.*) After reporting to ISAP, petitioner reported to the San Francisco ICE field office where he was detained. (*Id.* at 15.) Petitioner was informed he was being detained because he failed to report to the ICE field office on October 20, 2025, but petitioner asserts that he was never ordered to report to the ICE field office on October 20, 2025. (*Id.*) Respondents do not contest that petitioner was not required to report to the San Francisco ICE Office on October 20, 2025. (Doc.

1  No. 7 at 1–2.) Respondents state that petitioner "incurred compliance violations" while on the
2  Alternatives to Detention ("ATD") program, but they do not identify the alleged violations nor
3  suggest that the alleged violations were the reason for petitioner's re-detention. (*Id.*)
4        On December 5, 2025, petitioner filed the pending motion for a temporary restraining
5  order. (Doc. No. 2.) In that motion, petitioner requests that the court order his immediate release
6  from custody, or, in the alternative, order his immediate release if he is not provided a hearing
7  before a neutral adjudicator.[1] On December 5, 2025, the court directed petitioner's counsel to
8  serve respondents with a copy of the petition, the motion for temporary restraining order, and
9  accompanying papers, and set a briefing schedule on the pending motion. (Doc. No. 4.) On
10 December 8, 2025, respondents filed an opposition to the pending motion. (Doc. No. 7.)

## LEGAL STANDARD

12       The standard governing the issuing of a temporary restraining order is "substantially
13 identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v.*
14 *John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "The proper legal standard for
15 preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the
16 merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the
17 balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans,*
18 *Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council,*
19 *Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th
20 Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just
21 possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los*
22 *Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). A plaintiff seeking a preliminary injunction must
23 make a showing on all four of these prongs. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127,
24 1135 (9th Cir. 2011). The Ninth Circuit has also held that "[a] preliminary injunction is
25 appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were

---

[1] Petitioner also requests an order enjoining respondents from transferring him out of this district during the pendency of the underlying proceedings. (Doc. No. 2 at 2.) Because the court orders petitioner's immediate release, this request is rendered moot by this order.

1  raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134–35 (citation
2  omitted). The party seeking the injunction bears the burden of proving these elements. *Klein v.*
3  *City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co.*
4  *v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than
5  merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate*
6  immediate threatened injury as a prerequisite to preliminary injunctive relief."). Finally, an
7  injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the
8  plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.
9        The likelihood of success on the merits is the most important *Winter* factor. *See Disney*
10 *Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Plaintiff bears the burden of
11 demonstrating that he is likely to succeed on the merits of his claims or, at the very least, that
12 "serious questions going to the merits were raised." *All. for Wild Rockies*, 632 F.3d at 1131.

**DISCUSSION**

**A.   Likelihood of Success on the Merits**

15       Petitioner argues he is likely to succeed on his claim that respondents violated the Fifth
16 Amendment Due Process Clause when he was re-detained without a hearing before a neutral
17 adjudicator where the government would be required to justify his re-detention by clear and
18 convincing evidence. (Doc. No. 2-1 at 15.) Petitioner also argues that he is likely to succeed on
19 the merits of his claim that he is eligible for a post-detention bond hearing pursuant to 8 U.S.C. §
20 1226. (*Id.* at 25.) Respondents argue in opposition that petitioner is subject to mandatory
21 detention under 8 U.S.C. § 1225 and therefore is not likely to succeed on the merits of his
22 petition. (Doc. No. 7 at 2–4.) Respondents do not address petitioner's due process argument.
23 (*Id.*) Because it is dispositive of the pending motion, the court first addresses petitioner's due
24 process argument.
25 /////
26 /////
27 /////
28 /////

Petitioner appears to have been released from custody pursuant to 8 U.S.C. § 1182(d)(5).[2] (Doc. No. 7 at 12.) Parole pursuant to § 1182(d)(5)(A) is a distinct procedure from conditional release pursuant to § 1226(a). *See Espinoza v. Kaiser*, No. 1:25-cv-01101-JLT-SKO, 2025 WL 2675785, at *6 (E.D. Cal. Sept. 18, 2025) (noting that conditional release does not provide a pathway to seek adjustment of status).

> In one procedure, an arriving asylum seeker may be paroled "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). A separate procedure puts the immigrant in conditional parole. *Id.* § 1226(a). In either case, to release a noncitizen from custody requires a case-by-case determination, where the noncitizen must "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

*Noori v. Larose*, No. 25-cv-01824-GPC-MSB, 2025 WL 2800149, at *3 (S.D. Cal. Oct. 1, 2025). Petitioner's release pursuant to § 1182(d)(5) necessarily required a determination that he posed neither "a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Once released, a parolee acquires an interest in his or her continued liberty.

> Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that their liberty "will be revoked only if [they] fail[ ] to live up to the ... conditions [of release]." *Morrissey* [*v. Brewer*], 408 U.S. [471, 482 (1972)].

*Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Many district courts in the Ninth Circuit have found that non-citizens paroled into the United States pursuant to § 1182(d)(5) have a liberty interest in their continued release, entitling them to certain due process protections, the extent of which are determined by applying the test provided in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See e.g. Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB (HC), 2025 WL 3254999, at *5, 9 (E.D. Cal. Nov. 22, 2025) (determining that the petitioner was entitled to a

---

[2] The parties appear to dispute the statutory authority for petitioner's release. Petitioner's counsel declares on information and belief that petitioner was released pursuant to § 1226. (Doc. No. 2-2 at 5.) Respondents provided a copy of petitioner's I-94 form indicating he was released pursuant to 212(d)(5), which corresponds to § 1182(d)(5). (Doc. No. 7 at 12.) No other evidence has been presented to the court regarding the statutory authority for petitioner's release.

post-deprivation bond hearing after he was initially released pursuant to § 1182(d)(5)(A) and later re-detained); *Salazar v. Casey*, No. 25-cv-02784-JLS-VET, 2025 WL 3063629, at *4, 6 (S.D. Cal. Nov. 3, 2025) (ordering the petitioner released from custody subject to the conditions of her preexisting parole under § 1182(d)(5)(A), and requiring notice and a hearing prior to her re-detention); *Noori*, 2025 WL 2800149, at *9–10, 14 (enjoining re-detention of the petitioner during the pendency of his removal proceedings without leave of the court, when the petitioner was previously released on humanitarian parole pursuant to § 1182(d)(5)(A)); *Rodriguez Cabrera v. Mattos*, No. 2:25-cv-01551-RFB-EJY, 2025 WL 3072687, at *9–11, 14 (D. Nev. Nov. 3, 2025) (ordering the petitioner's immediate release following re-detention when he was initially released pursuant to § 1182(d)(5)(A)). The court agrees with the conclusions reached in the cited cases and finds that petitioner is likely to demonstrate that he has a liberty interest in his continued release. The court proceeds to consider whether due process requires written notice and a pre-detention hearing before a neutral adjudicator.

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release from custody. Petitioner was released for over three years prior to his re-detention. (Doc. No. 2-2 at 12–15.) During that time, petitioner applied for asylum and withholding of removal, began living with his partner, Ms. Gadea Hernandez, and worked in construction. (*Id.* at 13–16.) Petitioner's community ties support his private liberty interest. *See Salazar*, 2025 WL 3063629, at *4 ("Petitioner has an interest in remaining with her family, seeking counseling, and attending hearings to seek a visa."); *Noori*, 2025 WL 2800149, at *10 ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

/////

Second, the risk of erroneous deprivation is high when, as here, parole is revoked without written notice or reason. *See Salazar*, 2025 WL 3063629, at *4 (noting there was no evidence that the petitioner presented a danger to the community or a flight risk). "Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." *Omer G. G.*, 2025 WL 3254999, at *7 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). As discussed above, petitioner's release necessarily required a determination that he posed neither a danger to public safety nor a flight risk. 8 C.F.R. § 212.5(b); *Noori*, 2025 WL 2800149, at *3. Respondents provide no explanation for petitioner's re-detention. (Doc. No. 7.) Nor do they argue that petitioner is now a danger to public safety or a flight risk. (*Id*.) "Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Additional procedural safeguards, such as notice, and a pre-detention hearing would help ensure that any future detention is lawful. *See Pinchi*, 792 F. Supp. 3d at 1035.

"Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is 'low.'" *Salazar*, 2025 WL 3063629, at *5. Since respondents did not engage with petitioner's due process arguments, they have not provided the court with any information regarding the burden, if any, that additional process may place on the government. (Doc. No. 7.) If respondents wish to re-detain petitioner, they need only provide him with written notice and a hearing before a neutral adjudicator. *See Pinchi*, 792 F. Supp. 3d at 1036 ("Indeed, it is likely that the cost to the government of detaining [petitioner] pending any bond hearing would significantly exceed the cost of providing her with a pre-detention hearing.").

/////
/////
/////
/////

Petitioner has demonstrated that he is likely to succeed on the merits of his procedural due process claim because he has demonstrated a liberty interest in his continued release, and that his continued detention without written notice and a hearing is unlawful.[3]

**B.      Irreparable Harm, Balance of Equities, and Public Interest**

This court previously analyzed the irreparable harm, balance of the equities, and public interest in similar circumstances, specifically regarding improper revocation of detention and the ongoing harm of unlawful detention, in *N.D.N. v. Bondi*, No. 1:25-cv-01587-DAD-CKD, 2025 WL 3251102, at *7 (E.D. Cal. Nov. 21, 2025).  The court incorporates by reference that analysis and finds that the irreparable harm, balance of equities, and public interest factors favor granting petitioner's motion for a temporary restraining order.

**CONCLUSION**

For the reasons set forth above,

1. Petitioner's motion for a temporary restraining order (Doc. No. 2) is GRANTED as follows:

    a. Respondents are ORDERED to immediately release petitioner from respondent's custody with the same conditions he was subject to immediately prior to his detention on November 3, 2025;

    b. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner for any purpose, absent exigent circumstances, without providing petitioner written notice and a pre-detention hearing before a neutral adjudicator;

2. Under the circumstances of this case, petitioner will not be required to post bond pursuant to Rule 65(c) of the Federal Rules of Civil Procedure;

/////

---

[3] Given the court's determination that petitioner appears to have been released pursuant to § 1182(d)(5)(A) and that he is likely to succeed on the merits of his due process claim, the court need not address the merits of either petitioner's statutory claim that he is entitled to a bond hearing pursuant to § 1226, nor respondents' argument that petitioner is subject to mandatory detention pursuant to § 1225. (Doc. Nos. 2-1 at 25; 7 at 2–4.)

3. The parties are directed to meet and confer and, if possible, submit a joint proposed briefing schedule and hearing date with respect to any motion for a preliminary injunction no later than fourteen days from the date of entry of this order.

IT IS SO ORDERED.

Dated: **December 9, 2025**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE